· Staunton.

VIRGINIA IRON, COAL AND COKE COMPANY V. PROPHET.

September 20, 1917.

1. MASTER AND SERVANT—*Mines and Minerals—Negligence—Sagging Electric Wires.*—A mining company is guilty of actionable negligence in suffering an electric wire to remain detached from its original fastenings, which held it in a safe position, and in permitting it to sag to such an extent as to become dangerous to its employees, where if the company had used ordinary care to inspect the mine, the dangerous condition of the wire would have been discovered, and where the attention of the "mine boss" in charge of the entry, where the wire was strung, had been specifically drawn to the situation. In the case at bar, it was the duty of the company to have warned plaintiff's intestate, its employee, of the unusual and extraordinary danger to which he was exposed by the sagging wire, and its negligence was the efficient and proximate cause of his death.

2. APPEAL AND ERROR—*New Trial—Conflicting Evidence.*—In an action for death by wrongful act, the verdict of the jury for the plaintiff was rendered upon conflicting evidence and was approved by the trial court. From the standpoint of a demurrer to the evidence, the evidence was quite sufficient to sustain the verdict, and upon well-settled principles the Court of Appeals must accept the finding of the jury.

3 MASTER AND SERVANT—*Injury to Servant—Instructions—Declaration.*—In an action for the death of a servant from contact with an electric wire, an instruction that it was the duty of the master to use care commensurate with the danger to inspect and maintain its wire is not erroneous, although there was no allegation in the declaration charging failure to inspect. The declaration charged that it was the duty of the company to use reasonable care to maintain the wire in a safe position, and the breach of that duty. The duty to inspect was a minor incident to the principal duty of properly maintaining the wire, and did not call for special averment.

4. Master and Servant—*Negligence of Master—Instructions.*—In an action for the death of a servant through the negligence of his master, an instruction which did not conclude with a direction to find for the plaintiff, but merely told the jury that the omission of the master to use ordinary care to make a fallen wire reasonably safe, after it knew, or by ordinary care might have known, of the defect, was negligence, states a correct proposition of law.

5. Contributory Negligence—*Burden of Proof.*—In an action for the death of a servant by the negligence of his master, the burden of proving contributory negligence rested upon the defendant, unless the fact of such contributory negligence appeared from the plaintiff's own evidence.

Error to a judgment of the Circuit Court of Wise county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The following were the instructions for plaintiff referred to in the opinion:

1. The court instructs the jury that if they believe from the evidence that the defendants, Virginia Iron, Coal and Coke Company, had erected, and on the day the plaintiff's decedent was killed, maintained an electric wire along an entry in its mine charged with a dangerous current of electricity, then it became its duty to use care commensurate with the danger to inspect and maintain its said wire, while so charged with a dangerous current of electricity, to prevent injury to its employees who were lawfully in proximity to such wire, and liable to come in contact with it while in the discharge of the duties of their employment, and any failure upon the part of said defendant company to discharge such duty would be negligence.

2. The court instructs the jury that if they believe from the evidence that the defendant company, or its agents or employees in charge, knew, or by the use of care commen-

surate with the danger, might have known that its wire, maintained for the purpose of running a pump in its mine, while charged with a dangerous current of electricity, had become detached from its proper position and had sagged down and lay along the side of the rib of coal, and in such position as to be liable to come in contact with, and to injure the said Asa Prophet while passing along the entry in the discharge of the duties of his employment, then it was the duty of the defendant to use care commensurate with the danger to make the said wire reasonably safe, and if it failed to do so it is guilty of negligence.

3. The court instructs the jury that the law presumes that Asa Prophet exercised due and proper care upon his part at the time he was killed, and the burden of proving that he was guilty of contributory negligence is upon the defendant, unless such negligence is proved by the plaintiff's evidence.

*Bullitt & Chalkley* and *Jackson & Henson,* for the plaintiff in error.

*Bond & Bruce* and *Fulton & Vicars,* for the defendant in error.

WHITTLE, P., delivered the opinion of the court.

The judgment under review was recovered by the defendant in error for the death of his intestate, Asa Prophet, which was imputed to the negligence of plaintiff in error. The material facts relative to the occurrence were these:

Prophet, who at the time of his death was nineteen years of age, with occasional intervals, had been in the employment of plaintiff in error, first as a "trapper" and later as a "coal digger," for four or five years. He had had

very little experience as a driver and during his entire employment had not served in that capacity longer than "a week or such a matter." In May, 1915, while he was working as a coal miner, the company was "short a driver," and the driving boss asked him to drive in the "Jack Leg" entry on the night he was killed. He was not familiar with that part of the mine, and the driving boss testified that he went with him about 260 feet down the entry "to show him the haul, rather than the condition of the road, how to get the coal out."

The company operated an electric pump in the entry which was supplied with power over a non-insulated copper feed-wire, strung along the right hand side of the entry on the rib near the roof. The normal position of the wire at the point of accident was about eight feet ten inches above the rail. The driving boss further testified: "We went up to where the wire crossed (over the entry) and I showed him this wire and told him to be careful in turning the mules, to turn them to the left ·* * * as he might possibly get in the wire." The wire was strung on porcelain insulators spiked with large nails to blocks of wood driven in between the top of the coal and the roof. Four or five weeks before Prophet was killed, some of the insulators above the point of accident became detached from the blocks, and the wire swung down about two feet below its proper position to a point twenty or twenty-five feet from the place of accident. Subsequently, some two weeks prior to the accident, several of the insulators which hold the wire in position at the place of accident likewise came loose and the wire sagged until it reached the level of a man's shoulders, or about that height above the floor of the entry, and it remained in that condition until Prophet was killed. On that night he stopped his car near the switch points and walked down the entry to where Tom Gully, a miner, was working to ascertain whether he had a loaded car ready to be hauled out. In

returning to his car, and when he had reached a point some nine feet distant from the front of it, he went to the side of the track in order to pass the mules and came in contact with the sagging wire and was killed.

If the company had used ordinary care to inspect this entry, the dangerous condition of the wire would have been discovered. And besides, four or five days prior to the accident the attention of the "mine boss" in charge of the entry had been specifically drawn to the situation. There was no rule of the company requiring drivers to use any particular side of the track; and in the entry in question the space along the sides of the track was variable, and the drivers were accustomed to utilize whichever side was most convenient. The switch, which it was Prophet's business to operate, was on the right hand side, and he violated no duty in using that side. He was making his second trip when killed, and had no notice of the sagging wire, which "got dusty in the black coal and was hard to see."

The case was submitted to the jury upon the opposing theories of the litigants. The contentions of the plaintiff below being: That the company was guilty of actionable negligence in suffering the wire to remain detached from its original fastenings, which held it in a safe position, and in permitting it to sag to such an extent as to become dangerous to employees; that the company should have warned Prophet of the unusual and extraordinary danger to which he was exposed; and that its negligence was the efficient and proximate cause of his death. The company, on the other hand, denied the fact that the wire was permitted to sag as claimed by the plaintiff, and insisted that the verdict of the jury was contrary to the law and the evidence. It also insisted that the court erred in overruling its motion for a new trial on that ground. Moreover, it contended that the trial court erred in giving instructions 1, 2 and 3, at the instance of the plaintiff.

The jury's verdict for the plaintiff was rendered upon conflicting evidence and was approved by the trial court. From the standpoint of a demurrer to the evidence, the evidence is quite sufficient to sustain the verdict, and upon well settled principles this court must accept the finding of the jury. It may not be amiss, however, to add that, in our opinion, on all material issues the preponderance of the evidence was with the plaintiff.

The following are the exceptions to instructions:

Instruction one was objected to because it told the jury that it was the duty of the company to use care commensurate with the danger to inspect and maintain its wire, when there was no allegation in the declaration charging failure to inspect. The declaration charged that it was the duty of the company to use reasonable care to maintain the wire in a safe position, and the breach of that duty. The duty to inspect was a minor incident to the principal duty of properly maintaining the wire; and did not call for special averment.

It will be observed that instruction 2 did not conclude with the direction to find for the plaintiff, but merely told the jury that the omission of the company to use ordinary care to make a fallen wire reasonably safe, after it knew or by ordinary care might have known of the defect, was negligence. The instruction states a correct proposition of law.

Instruction 3 rightly informed the jury that the burden of proving contributory negligence rested upon the defendant, unless the fact of such contributory negligence appeared from the plaintiff's own evidence.

The case involves no new principles. It was fairly submitted to the jury on the law, and their verdict is sustained by the evidence.

The judgment is without error and must be affirmed.

*Affirmed.*